UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEVI STRAUSS & CO.,

    Plaintiff,

v.

J. BARBOUR & SONS LTD., et al.,

    Defendants.

Case No. 3:18-cv-03540-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 27

United Kingdom-based defendant J. Barbour & Sons Ltd. argues that it should be dismissed from this case for lack of personal jurisdiction, leaving its wholly-owned United States-based subsidiary Barbour Inc. as the sole defendant in this trademark infringement action. However, given the uncontested allegations and undisputed evidence that Barbour & Sons designs the allegedly infringing articles, is in charge of worldwide marketing for the infringing articles, owns the U.S. trademarks for the infringing articles, and owns and maintains the U.S.-facing website through which United States consumers can locate stores in this District where they can purchase the infringing articles, specific jurisdiction over Barbour & Sons has been established. The motion to dismiss is DENIED.

## BACKGROUND

**I.    FACTUAL BACKGROUND**

In this case, Levi Strauss & Co. ("LS&Co.") alleges infringement on its trademark "LEVI's Tab" ("Tab") by J. Barbour & Sons Ltd. ("Barbour & Sons"), a United Kingdom-based apparel company and by its U.S. subsidiary, Barbour Inc. (Barbour Inc.). First Amended Complaint ("FAC") ¶ 1 (Dkt. No. 23). Barbour & Sons previously filed a declaratory action[1]

---

[1] *J. Barbour & Sons Ltd., et al. v. Levi Strauss & Co.*, Case No. 1:18-cv-05195-LAP (S.D.N.Y. 2018) ("SDNY Action").

concerning the same subject matter in the Southern District of New York, which the Hon. Loretta A. Preska dismissed on January 30, 2019 in favor of this action.

LS&Co. is an apparel company incorporated in Delaware with its principal place of business in San Francisco, California. Complaint ("Compl.") ¶ 4 (Dkt. No. 1). LS&Co. marks its LEVI's products with the Tab, a textile marker bearing the LEVI's name that is sewn into the seam of a garment. *Id.* ¶¶ 10–11. LS&Co. has registered its trademark with the United States and California. *Id.* Ex. A (Dkt. 1-1). The purpose of the Tab is "to provide sight identification of LS&Co.'s products." *Id.* ¶ 11.

Labels and hangtags attached to LEVI's products inform consumers that LS&Co. owns the Tab Trademark and is located in San Francisco. Opposition to Motion to Dismiss ("Opp.") Ex. B, Declaration of Gregory S. Gilchrist ("Gilchrist Decl.") ¶ 7 (Dkt. No. 31-1); Opp. Ex. E (Dkt. No. 31-6). Additionally, rivets and button shanks used in LS&Co. products are imprinted with "S.F." or "S.F. Cal." Gilchrist Decl. ¶ 8. The waistband patch and "Guarantee Ticket" present on LS&Co. products also announce that LS&Co. is from San Francisco. *Id.*

Barbour & Sons was founded and has its current headquarters in the United Kingdom. Declaration of Joseph M. Bernhoeft ("Bernhoeft Decl.") ¶¶ 3–4 (Dkt. 28-2). It uses its own identifying mark on its products, which it calls the Barbour flag ("Flag"). *Id.* ¶ 2. It owns U.S. trademark registrations for the Flag design and has been using the Flag since at least 2001. Opp., Ex. B, Supplemental Declaration of Calla A. Yee ("Yee Suppl. Declaration") at 7–37 (Dkt. No. 31-3); SDNY Action Complaint, Ex. A (Dkt. No. 1-2).

Barbour & Sons' wholly owned subsidiary Barbour Inc. is a Delaware corporation with headquarters in Milford, New Hampshire. Declaration of Andy Hill ("Hill Decl.") ¶s 4, 6. (Dkt. 28-1). "To date, all authorized sales and distribution of Barbour-branded products in the United States have been conducted by Barbour Inc. and its authorized retailers." *Id.* ¶ 4. Barbour & Sons and Barbour Inc. maintain separate boards of directors, financial records, and bank accounts. Bernhoeft Decl. ¶¶ 8–9. Barbour Inc.'s Secretary/General Manager and its Account Manager are the only Barbour Inc. employees that report to Barbour & Sons. *Id.* ¶ 16.

Barbour & Sons retains general executive responsibility for Barbour Inc. operations and

reviews and approves Barbour Inc.'s major policy decisions, including the opening and location of Barbour-branded retail outlets in the United States. Bernhoeft Decl. ¶¶ 13, 17. Barbour & Sons also ensures that "the Barbour brand is marketed consistently throughout the world." *Id*. ¶ 12. Barbour & Sons designs and manufactures the products, and Barbour Inc. "collaborates" with the U.K. design team "regarding the strategy for and selection of products for the U.S. market." Hill Decl. ¶¶ 10, 13.

Barbour Inc.'s management team retains responsibility for Barbour Inc.'s day-to-day operations. Bernhoeft Decl. ¶ 12. That includes making "routine" purchasing decisions, fulfilling orders from its inventory, and negotiating its own contracts including "trade price discounts" and payment terms. *Id*. ¶¶ 18-20. Barbour Inc. operates a New York showroom that also operates as its head sales office. Hill Decl. ¶¶ 9, 13. Barbour Inc. maintains wholesale accounts with Bloomingdales, Macy's, and other large retailers, as well as with small boutique stores. *Id.* ¶ 11. Barbour Inc. leases and operates fifteen retail and outlet store locations and has signed a lease for a space in Los Angeles to eventually serve as a Barbour Inc. showroom. Bernhoeft Decl. ¶ 6; Declaration of J. Michael Keyes (Dkt. No. 28) ¶ 4.

According to LS&Co., and not disputed, Barbour & Sons owns and operates a non-transactional U.S. facing website, www.barbour.com. Gilchrist Decl. ¶ 4. Through the website, consumers may view Barbour brand products, contact customer care at Barbour & Sons, and report possible product infringement. *Id.* ¶¶ 4, 9. The products that can be viewed on the website include articles of clothing with the Flag, which the site specifically calls out in its description of the clothing. *Id.* ¶¶ 5–6. The website also features a "stockist locator" that allows consumers to locate Barbour brand stores and independent retailers that sell Barbour & Sons products in the United States. *Id.* ¶ 10. The locator lists eight non-Barbour branded retail locations within the Northern District of California. Yee Suppl. Decl., Ex. B.

## II. PROCEDURAL BACKGROUND

On May 22, 2018, counsel for LS&Co. sent Barbour & Sons a cease-and-desist letter to the Milford, New Hampshire headquarters of Barbour Inc. SDNY Action Dkt. No. 1-29. The letter asserted that there are significant similarities between the LS&Co. Tab and the Barbour Flag,

3

which were likely to create consumer confusion and give rise to claims against Barbour & Sons for trademark infringement and dilution. *Id.* 3. Counsel for LS&Co. requested that Barbour & Sons "immediately cease and desist, on a worldwide basis, from any use of the [Flag]," withdraw all infringing products from the marketplace, and provide binding written assurances that it would no longer manufacture, distribute, or sell the allegedly infringing products. *Id.* The letter advised that Barbour & Sons had ten days to respond. *Id.*

On June 9, 2018, Barbour & Sons and Barbour Inc. filed for declaratory judgment against LS&Co. in the Southern District of New York. SDNY Action, Dkt. No. 1. The complaint requested that the court declare that there was (i) no commercial activity by Barbour & Sons in the U.S.; (ii) no trademark infringement by Barbour & Sons or Barbour Inc.; (iii) no unfair competition by Barbour & Sons or Barbour Inc.; and (iv) no trademark dilution by Barbour & Sons or Barbour Inc. *Id.* Four days later, on June 13, 2018, LS&Co. filed this case against Barbour & Sons and Barbour Inc. for trademark infringement, unfair competition, and dilution. Dkt. No. 1. On July 5, LS&Co. moved to dismiss or transfer the SDNY Action to this District. SDNY Action Motion to Dismiss or Transfer, Dkt. No. 10. LS&Co. filed a First Amended Complaint in this case on September 19, 2018. FAC, Dkt. No. 23.

On November 20, 2018, Barbour & Sons moved to dismiss this case for lack of personal jurisdiction. Motion to Dismiss ("Mot."), Dkt. No. 27. Shortly thereafter, counsel for LS&Co. emailed counsel for Barbour & Sons proposing that the parties stipulate to dismissal of all claims involving Barbour & Sons in return for Barbour Inc. agreeing that they performed all allegedly infringing activities. Dkt. No. 31-2 at 2–3. Counsel for Barbour & Sons declined. *Id.* at 2.

I stayed Barbour & Sons' motion to dismiss on January 11, 2018, pending resolution of the motion to dismiss or transfer in the SDNY Action. Dkt. No. 33. On January 30, the Hon. Loretta A. Preska granted LS&Co.'s motion to dismiss the SDNY Action, concluding the SDNY case was an impermissible anticipatory action. SDNY Action, Dkt. No. 34. I subsequently lifted the stay on this motion to dismiss and set a hearing on the motion. Dkt. No. 35.

4

**LEGAL STANDARD**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations omitted). Conflicts in the evidence must be resolved in the plaintiff's favor. *Id.* Where, as here, the motion is based on written materials rather than an evidentiary hearing, "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).

In the absence of general jurisdiction, a nonresident defendant may be sued in the forum if specific jurisdiction exists. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).[2] Specific jurisdiction arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum."[3] *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit employs a three-part test to determine whether there is specific jurisdiction over a defendant:

(1) the non-resident defendant must purposefully direct his activities or

---

[2] LS&Co. does not meaningfully argue that Barbour & Sons is subject to general jurisdiction in California other than to say that Barbour & Sons has sufficient contacts to "raise a substantial question about that basis for personal jurisdiction." Opp. 2. Therefore, I will analyze only whether there is specific jurisdiction.

[3] "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

5

consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* at 802. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. *Id.* If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*[4]

## DISCUSSION

### I. PURPOSEFUL DIRECTION

LS&Co. argues that Barbour & Sons has purposefully directed its activities at California through "in-forum sales of [Barbour & Sons'] products and its active promotions aimed directly at consumers within the District," along with designing the infringing products and maintaining the website. Opp. 8–10. Barbour & Sons counters by arguing that any sales and promotion in California have been performed by Barbour Inc. and that while it owns the website, the website is passive and by itself cannot support personal jurisdiction over Barbour & Sons. Mot. 11–12.

In trademark infringement actions and copyright infringement actions, the plaintiff must show that defendants purposefully directed their activities at the forum. *Adobe Sys. Inc. v. Blue Source Group, Inc.*, 125 F.Supp.3d 945, 960 (N.D. Cal. 2015). Courts analyze purposeful direction by the "effects" test. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218,

---

[4] The factors to be considered in determining reasonableness include: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 745 (9th Cir. 2013) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000)).

6

1228 (9th Cir. 2011) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "[T]he defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)) (internal quotation marks and formatting omitted). A plaintiff successfully shows express aiming by pleading that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

In cases alleging the violation of intellectual property rights, specific jurisdiction may also exist "where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state." *Adobe Sys. Inc.*, 125 F.Supp.3d at 961; *see also Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007) (citing and collecting cases); *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675-76 (9th Cir. 2012) (plaintiff who alleged that defendant "willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of business in the Central District [of California]," established that defendant's intentional act was "expressly aimed at the Central District of California because [defendant] knew the impact of his willful violation would be felt there."); *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 U.S. Dist. LEXIS 14534, 2011 WL 566812, at *3 (N.D. Cal. Feb. 14, 2011) ("In intellectual property cases, the Ninth Circuit has found specific jurisdiction where a plaintiff bringing suit in its home forum against an out-of-state defendant alleges that the defendant engaged in infringing activities knowing that plaintiff was located in the forum.").[5]

---

[5] There is, however, a split in the Ninth Circuit as to whether knowingly and directly aiming at a California-based plaintiff is sufficient by itself to confer jurisdiction following the Supreme Court's decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014). *See Adobe Sys. Inc. v. Cardinal Camera & Video Ctr.*, Inc., 15-CV-02991-JST, 2015 WL 5834135, at *4 (N.D. Cal. Oct. 7, 2015) (recognizing split).

7

### A. Barbour & Sons Committed an Intentional Act

LS&Co. contends that Barbour & Sons acted intentionally by manufacturing, promoting, and selling products bearing the allegedly infringing Barbour Flag; and owning and maintaining the website that directs consumers in this District to where they can buy the infringing products in this District. First Am. Compl. ¶¶ 16–17. Barbour & Sons responds that "[a]ny and all activities directed at [California] and giving rise to this action are attributable to Barbour Inc.," not to Barbour & Sons.[6] Mot. 2. However, Barbour & Sons does not deny its design and manufacture of the allegedly infringing products, or its ownership and operation of the website that lists locations within California where the products can be purchased. Those are intentional acts; the intentional act prong is satisfied.

### B. Barbour & Sons' Activity Was Aimed at California

LS&Co. contends that Barbour & Sons' activities meet the express aiming prong of the "effects" test because (i) Barbour & Sons manufactures, designs, and sells its products with the knowledge that they will eventually reach California, (ii) Barbour & Sons promotes its products to residents of California through its website, and (iii) Barbour & Sons must have known that LS&Co. owned the Tab trademark and was located in San Francisco. Opp. 9–12. Barbour & Sons counters that jurisdiction cannot be exercised over it because (i) Barbour & Sons is not responsible for in-forum sales, (ii) its website is not sufficiently interactive to establish express aiming because visitors cannot purchase products through the website, and (iii) LS&Co. has not offered any evidence that Barbour & Sons knew about LS&Co's its ownership of the Tab trademark or its location in San Francisco before Barbour & Sons received the cease-and-desist letter. Reply in Support of Motion to Dismiss ("Reply") at 3–4 (Dkt. No. 32).

LS&Co. argues that express aiming is primarily satisfied by Barbour & Sons' operation of its website—which points consumers to locations in California where its products can be

---

[6] In its motion, Barbour & Sons contends that Barbour Inc.'s contacts with California cannot be imputed to Barbour & Sons because Barbour Inc. is not its "alter ego." Mot. 18–20. Because LS&Co. does not respond to these arguments, I will analyze only those activities the evidence shows have been performed by Barbour & Sons, not Barbour Inc. Namely, the (i) design and manufacture of the allegedly infringing products, (ii) the global marketing of the products, and (iii) ownership and maintenance of the U.S. website.

8

purchased, provides a Barbour & Sons customer care contact, and allows consumers to report trademark infringement. In the Ninth Circuit, "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir.2002). "In determining whether a nonresident defendant has done 'something more,' we have considered several factors, including the interactivity of the defendant's website . . . the geographic scope of the defendant's commercial ambitions . . . and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1229 (9th Cir. 2011).

The parties dispute whether Barbour & Sons' website is more akin to a "passive" website only advertising its products or a more interactive website. LS&Co. points out that the Barbour & Sons website not only allows consumers to contact Barbour & Sons' customer care, but also report potential trademark infringement. Gilchrist Decl. ¶¶ 9-10. Most significant, however, is that the website's "stockist" function allows a user to search for Barbour & Sons trademarked goods in California and discloses numerous retail locations in California where those goods are available. Barbour & Sons asserts that function is irrelevant to express aiming because the retail establishments that sell its goods in this District are supplied directly by Barbour Inc. based on ordering decisions made by the retailer in negotiations with Barbour Inc. However, Barbour & Sons does not dispute that *it* maintains the website. It has knowledge and the intent that its designed goods—goods displaying its trademarked and allegedly infringing Flag—are sold in California and consumers can find those locations through *its* own website.[7] These facts distinguish this case from cases where the maintenance of websites that merely advertise a product or service without content aimed at the forum have been found insufficient to establish specific jurisdiction. *See, e.g., Modak v. Alaris Companies, LLC*, C 08-5118 CW, 2009 WL 1035485, at *5 (N.D. Cal. Apr. 17, 2009) (noting nothing on the defendant's website "specifically targeted" California).

---

[7] The facts of this case, therefore, are unlike those in *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414 (9th Cir. 1997), where there was a wholly passive website and no evidence of any contacts in the forum state except the ability of consumers to access the site over the internet from the forum state.

1    I conclude that Barbour & Sons' website is more than merely passive and shows that

2    Barbour & Sons knew that its products—albeit ones sold to the retailers through Barbour Inc.—

3    were being sold in California and that its efforts *promoted* those California sales.

4    LS&Co. also contends that (strengthening the case for specific jurisdiction) Barbour &

5    Sons *had* to know that LS&Co. was based in California. Given that knowledge, LS&Co. argues

6    the express aiming element is satisfied for this trademark infringement action. In response,

7    Barbour & Sons points out that there is no express allegation about its knowledge of LS&Co.'s

8    location in the FAC or other evidence that Barbour & Sons had to know where LS&Co. was

9    headquartered. With its opposition brief, however, LS&Co. submits evidence and argues that

10   because many of its products and its packaging expressly identify LS&Co. and the products as

11   originating in San Francisco, and given that the company's history is well-known around the

12   world, Barbour & Sons' failure to disclaim knowledge of LS&Co.'s San Francisco base is fatal.

13   *See, e.g., Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1107 (C.D. Cal. 2007)

14   ("Defendants do not deny that they knew AICO was located in California.").

15   While there is debate over whether knowledge of a trademark holder's location can be an

16   independent ground for jurisdiction after *Walden v. Fiore*, I agree that Barbour & Sons' failure to

17   disclaim knowledge of LS&Co.'s location strengthens my conclusion that specific jurisdiction

18   exists (and as discussed below, would be reasonably exercised) over Barbour & Sons in light of

19   the undisputed evidence regarding Barbour & Sons' website and Barbour & Sons' targeting to

20   consumers in California through the stockists disclosing where the infringing products designed

21   by Barbour & Sons can be purchased in this District.

## II.  WHETHER THE CLAIM ARISES OUT OF BARBOUR & SONS' CONTACTS WITH CALIFORNIA

Barbour & Sons argues that LS&Co.'s claims do not arise out of Barbour & Sons' (i) design and manufacture of the allegedly infringing products or (ii) ownership and maintenance of the non-transactional Barbour website. Mot. 15. Instead, Barbour & Sons contends the distribution, marketing, and sales executed in the U.S. by Barbour Inc. are the activities that give

rise to LS&Co.'s claims. *Id.*[8] LS&Co. counters that "but for the design, sales, display, and promotion of the infringing products on [Barbour & Sons'] website, the claims might fail," but given all of those factors, the trademark infringement claim here arises out of Barbour & Sons' own activities. Opp. 13. I agree.

Whether LS&Co.'s claims arise out of Barbour & Sons' forum-related contacts is determined by analyzing whether these contacts were the "but-for" cause of LS&Co.'s claims for infringement and dilution. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Ultimately, the court must determine "if the plaintiff would not have been injured but for the [defendant's] conduct directed toward [plaintiff] in California." *Panavision* at 1322. "The Ninth Circuit has recognized that, in trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied." *Adobe Systems Inc. v. Blue Source Group, Inc.*, 125 F.Supp.3d 945, 963 (N.D. Cal. 2015) (citing *Panavision*, 141 F.3d at 1322).

LS&Co. had adequately alleged its harm in this forum due to defendants' conduct. As noted above, the evidence and uncontested allegations show that Barbour & Sons had knowledge that its allegedly infringing products (the products with the Flag trademark owned in the U.S. by Barbour & Sons) were being marketed to U.S. consumers through its website. That same evidence and uncontested allegations show that Barbour & Sons' knew its products were being sold in this District and Barbour & Sons facilitated those sales through its website that allowed consumers in this District to locate retail sellers here. That there is no evidence that any "Flag" products are currently sold in this District[9] does not undermine LS&Co.'s otherwise plausible allegations and evidence that part of its harm in fact arises out of Barbour & Sons' conduct aimed

---

[8] Barbour & Sons asserts in its Reply that, to the extent stockists that carry Barbour-branded products are listed in the Barbour & Sons' website, "that conduct is attributable to Barbour Inc. as well." Reply at 7. That is so, presumably, because Barbour Inc. sells the product directly to those stockist retailers. However, Barbour & Sons ignores that *it* designed those products and marketed those products – albeit somewhat in collaboration with employees of Barbour Inc. – and then included those products and locations for purchase in California on the website *it* owns and operates.

[9] A point on which Barbour & Sons submits no evidence.

at this District.

### III. WHETHER EXERCISE OF JURISDICTION IS REASONABLE

Finally, Barbour & Sons argues that exercise of jurisdiction over it would be unreasonable, primarily given its lack of direct contacts with California and because complete relief would be secured even if only Barbour Inc. remains as a defendant in this case. It also disputes any significance to the fact that it filed the affirmative suit in New York, asserting it only did so because the LS&Co. cease-and-desist letter was addressed only to Barbour & Sons.

Although Barbour & Sons' interjection into California has been relatively low, none of the other factors weigh strongly in its favor. While Barbour & Sons argues that New York is a more efficient and convenient forum for it to litigate in, its affirmative action there has been *dismissed* as anticipatory. There is no doubt that this forum is more efficient and convenient for plaintiff. Barbour & Sons has not shown that exercise of jurisdiction over it in this District would be unreasonable.

### CONCLUSION

For the foregoing reasons, LS&Co. has shown that specific jurisdiction exists over Barbour & Sons and it is not unreasonable for it to defend this trademark infringement action in this District. Barbour & Sons' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: March 11, 2019

William H. Orrick
United States District Judge